UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| COLIN D. ROSE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 1:06-cv-1504-SEB-JMS |
| ) | |
| KEN CAREY, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

For the reasons explained in this Entry, the defendants' motion for summary judgment is **granted.**

**Background**

Colin D. Rose ("Rose") is an inmate at a prison in Philipsburg, Pennsylvania. He was confined at the Federal Correctional Institution in Terre Haute, Indiana ("FCI"), which is one of the facilities within the Federal Correctional Complex, from July 6, 2005, through December 20, 2006. The FCI is a prison operated by the Federal Bureau of Prisons ("BOP"). Rose claims in this action that while he was confined at the FCI the defendants, Kenneth Carey, Billy Reese, Dwayne Stout, Jeffrey Bishop, Kevin Ferran, and T. Lloyd, violated his civil rights.

Rose filed this lawsuit pursuant to the theory recognized in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). At the time the action was filed Rose was a prisoner. Accordingly, his complaint was screened as required by 28 U.S.C. § 1915A. *Lagerstrom V. Kingston,* 463 F.3d 621, 624 (7th Cir. 2006). This statute requires that any complaint submitted by a prisoner, or any claim within such a complaint, be dismissed if the complaint or the claim fails to state a claim upon which relief can be granted. See *Sanders v. Sheahan,* 198 F.3d 626 (7th Cir. 1999). As a result of that screening and of early proceedings in the case, on September 10, 2007, the certain claims were dismissed as either legally insufficient or as abandoned. The remaining claims are the following:

1. Kevin Ferran, Bill Reese, and Dwayne Stout violated Rose's Eighth Amendment rights by denying him access to toilet facilities while working in the recreation yard (Counts II, V, and VII); and

>   2.   Dwayne Stout retaliated against Rose by filing a conduct report against Rose for leaving the work area to exercise a protected right, *i.e.,* utilizing toilet facilities (Count III).

The defendants seek resolution of these remaining claims through the entry of summary judgment. They argue that there was no violation of Rose's federally secured rights and that, in any event, they are entitled to qualified immunity. Rose opposes this resolution, arguing that he has presented admissible evidence of an open and obvious condition requiring his quick access to the toilet facilities due to his frequent bowel movements and bleeding and that despite the defendants' knowledge of this condition they refused to allow Rose to use the toilet in the recreation shack and only rarely allowed him to return to his housing unit. Further, Rose argues that he has provided evidence that he was retaliated against when he had permission to use the restroom facility in the housing unit but a grievance was filed against him.[1]

## Summary Judgment Standard

The motion for summary judgment in this civil rights action, as with any such motion, must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. Rule 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2). When the moving party has met the standard of Rule 56, summary judgment is mandatory. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

---

[1]Preliminarily, there is a matter of the scope of Rose's claims. The defendants argue that Rose's response to the motion for summary judgment improperly attempts to expand the scope of his claims. In its screening entry, the court dismissed as legally insufficient any claim related to the issues of racial discrimination or being subjected to racial slurs. The court understands the first of the remaining claims, however, to be that the defendants were indifferent to Rose's serious medical needs when they refused to allow him to use restroom facilities. This understanding of the claim is consistent with Rose's response to the motion for summary judgment. The defendants' position that this response should be limited due to Rose's alleged failure to exhaust administrative remedies is **rejected**.

## Material Facts

The following facts are undisputed or if disputed represent the version most favorable to Rose as the non-movant.

1. At all times relevant to his claims here, Rose was housed at FCI Terre Haute and was assigned to a work detail within the Recreation Department from 8:00 a.m. through 3:00 p.m. Rose was confined at the FCI from July 6, 2005, through December 20, 2006.

2. Outdoor restroom facilities on the recreation yard were designed for seasonal use when large groups utilize the recreation yard, where it would be impractical and contrary to institution security for large numbers of inmates to leave the yard. These outdoor restroom facilities were not intended for cold weather operation or use. The FCI had and has a standing preventive maintenance procedure to disconnect water service to outside restroom facilities during late October or early November to prevent costly damage to physical plant equipment (*e.g.,* water lines, sinks, toilets, urinals). Water is restored to outside restrooms in the spring (late March or early April) as the threat of freezing temperatures dissipates. This practice was standard operating procedure at the FCI long before Rose was housed at the FCI.

3. In addition to the outdoor restroom facilities located on the recreation yard for inmates, there is a restroom located inside the "recreation shack" (recreation yard outbuilding), which is designated as a "staff only" restroom. Inmate use of "staff only" restrooms is expressly prohibited in all BOP facilities by current labor agreement and is contrary to institutional policy, practice, security and staff safety.[2] When Rose asked if he could use the "staff only" restroom in the recreation shack, he was told that he could not.

4. Indoor restroom facilities are provided approximately ten yards away from the recreation yard, in the institution laundry, for the small number of inmates working on the recreation yard during the "off season." Rose was aware of the availability of these facilities in the laundry, as well as of the presence of inmate restroom facilities in his housing unit. The defendants testified that Rose was informed of that fact.[3] When he attempted to use the restroom inside the laundry, however, Rose was told that he was not allowed to use it.

---

[2] Rose provided affidavits to support his claim that at least two inmates were allowed to use the "staff only" restrooms. However, this disputed statement is not material to the resolution of his claim because there is no dispute that use of the "staff only" restroom by inmates violates BOP policy as well as the current labor contract with correctional officers. The possible violation of this policy does not afford Rose a constitutional right to violate the policy.

[3] The parties dispute whether the defendants conveyed this information to Rose, but not whether Rose knew of the restroom facilities available to him.

      5.      It is undisputed that inmates working in the recreation yard during the winter months may access restroom facilities in their housing units, after obtaining their supervisor's permission. Rose admits that he knew that restroom facilities in the housing unit were available to him with permission. When he asked Reese about using the toilets near the housing unit, however, he was referred to Stout and Ferran. Stout and Ferran would occasionally allow him to use the restrooms located in the housing area "but usually would not."

      6.      Rose testified that he has a medical condition that requires him to use the toilet more frequently than normal and that he conveyed this need to Reese, Ferran and Stout. Rose further notes that his condition was evident because he defecated on himself when he was not provided access to the restroom. However, Rose was not subject to any medical restrictions regarding special toilet or bathroom access. He had no medical restrictions and was suitable for regular duty. There was nothing in the evaluation of Rose's records which supported a classification or noted a medical condition that would require additional toilet facility needs beyond that required by any other general population status inmate. Stout advised Rose that he needed to make an appointment with the health services department if he believed he had a medical issue requiring treatment. Thus, the dispute over whether he advised Stout, Reese, and Ferran about his medical status is immaterial and irrelevant because it is undisputed that the medical department staff had not issued any special needs provision for Rose regarding his restroom use.

      7.      On December 21, 2005, Rose was absent from his work site at the recreation yard without permission. As a work detail supervisor, Stout was responsible for knowing the location and activities of inmates assigned to their work site at all times during the scheduled work day. Rose was aware that he was to advise staff if he were leaving a particular work area or assignment. Rose states that he had in fact requested permission to use the restroom facility at the housing unit and Stout had approved it. Rose offers no detail of the permission he claims he was granted, *i.e.,* what time it was given, whether he was supposed to return to the work site after completing his business, etc.

      8.      With Rose missing from his work assignment on December 21, 2005, Stout commenced a search. That search was not successful, and Stout had to contact correctional services staff to assist the search. Rose was eventually located in his housing unit. Based on these circumstances, Stout issued an *Incident Report* charging Rose with violating prison rules prohibiting inmates from the "Unexcused Absence From Work." The *Incident Report* authored by Stout was processed by Lloyd in accord withe BOP policy. Rose was notified of the charged misconducted and admitted being absent from his assigned work site at the time alleged in the *Incident Report*. Nonetheless, Rose was never disciplined as a result of this violation of prison rules.

## Discussion

Rose's claims are asserted pursuant to the theory recognized in *Bivens*. The court has jurisdiction over such claims through 28 U.S.C. § 1331. *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers. . . ." *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). Thus, to maintain an action under 28 U.S.C. § 1331, the plaintiff "must allege a violation of the United States Constitution or a federal statute." *Goulding v. Feinglass,* 811 F.2d 1099, 1102 (7th Cir. 1987). "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994); see *Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005)("[C]onstitutional claims must be addressed under the most applicable provision."). Because *Bivens* creates a remedy, not a substantive right, *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir. 1995) (noting that "the effect of *Bivens* was to create a remedy against federal officers acting under color of federal law that was analogous to the Section 1983 action against state officials"), this same inquiry governs claims asserted pursuant to *Bivens.*

The right implicated by Rose's claim of the wrongful denial of access to toilet facilities is the Eighth Amendment's proscription against the imposition of cruel and unusual punishments. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The right implicated by Rose's claim of retaliation is the due process guarantee of the Fifth Amendment.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan,* 114 S. Ct. 1970, 1976 (1994). A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 114 S. Ct. at 1977.  As the Court explained in *Farmer,* "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.*  The second requirement is a subjective one:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 1979.

5

The fact that Rose may not have been permitted to use a particular restroom when he asked to use it on a particular occasion is insufficient to establish a constitutional violation when alternative restrooms were available. Stout, Reese, and Ferran did not deny Rose use of the inmate restroom facilities. Rose admits that he knew that restroom facilities were available to him while working his shift at the recreational yard, including at the housing unit, and at the laundry just a short distance from the recreational yard. Rose was not always granted permission to return to the housing unit to use the restroom. However, he does not allege that when he was denied permission to return to the housing unit that he was also denied permission to utilize the inmate restroom at the laundry.

Denial to Rose of "staff only" facilities was not improper, either in form or in consequence. The occasional denial of Rose's request to use restrooms in the laundry does not establish a material fact in dispute as to whether Rose was thereby denied the minimal civilized measure of life's necessities. Notwithstanding Rose's general claim that he needed special access to restrooms because of a physical condition, no orders by the medical staff to accord Rose special access or accommodations had been issued. The defendants are not alleged to have unnecessarily delayed Rose's access to a restroom in circumstances where there was a medical need for that access. *Cf. Gil v. Reed,* 381 F.3d 649, 662 (7th Cir. 2004) (recognizing that "hours of needless suffering" can constitute harm). On the contrary, Stout advised Rose that he needed to make an appointment with the health services department if he believed he had a medical issue requiring special restroom access. This negates the necessity of deliberate indifference, for reasonable measures taken to avert known risks will insulate a prison official from Eighth Amendment liability, even if those measures proved unsuccessful. *See Farmer,* 511 U.S. at 844; *see also Lewis v. Richards,* 107 F.3d 549, 556 (7th Cir. 1997) (Flaum, J., concurring). There is, additionally, a complete dearth of evidence showing that any defendant made a decision regarding Rose's restroom access with the highly culpable state of mind necessary to support the deliberate indifference prong of an Eighth Amendment violation. The evidentiary record summarized above negates the presence of the subjective state of mind required to show deliberate indifference, *i.e.,* that the defendants were "subjectively aware of [Rose's] serious medical needs and disregarded an excessive risk that a lack of treatment posed to his health or safety." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001). Rose's opinion otherwise does not support a claim of cruel and unusual punishment. *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."). *See generally, Lewis v. Holsum of Ft. Wayne, Inc.,* 278 F.3d 706, 709 (7th Cir. 2002) (on summary judgment, "a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

The last facet of Rose's claim of cruel and unusual punishment is that the defendants conspired to deny him use of the restroom facilities by turning the water off in the recreation yard. No recovery is possible as to this contention. The defendants had no involvement in the decision to terminate the water supply to the outside restrooms for a period of time that included December 21, 2005. Further, the act of shutting off water to outside facilities or assets during the winter months to prevent damage did not deny Rose of any constitutional rights, as other restroom facilities were made available.

6

Rose's second claim is asserted against defendant Stout. Rose claims that on December 21, 2005, Stout retaliated against Rose for using the restroom by filing the *Incident Report* wherein Rose is reported to have been absent from work without an excuse.

It is well settled that prison officials cannot retaliate against a prisoner who exercises his First Amendment rights. *See Crawford-EL v. Britton,* 523 U.S. 574 (1998). In order to establish a *prima facie* case of First Amendment retaliation, a plaintiff must establish that: (1) his or her conduct was constitutionally protected, and (2) his or her conduct was a "substantial factor" or "motivating factor" in the defendants' challenged actions. *Abrams v. Walker,* 307 F.3d 650, 654 (7th Cir. 2002). This latter element is negated where the allegedly retaliatory action would have happened regardless of the defendants' motives. *Mt. Healthy City School District Board of Educ. v. Doyle,* 429 U.S. 274 (1976). The Seventh Circuit has explained "that even if a defendant was 'brimming over with unconstitutional wrath' against a § 1983 plaintiff, that plaintiff cannot prevail unless he or she establishes that the challenged action would not have occurred 'but for' the constitutionally protected conduct." *Abrams v. Walker,* 307 F.3d 650, 654 (7th Cir. 2002) (citing *Button v. Harden,* 814 F.2d 382, 383 (7th Cir. 1987)).

Here, Rose explains that he was not allowed to use the restroom in the recreation shack, that the outdoor restroom was closed, and that he had been told not to use the restroom in the laundry facility. Therefore, he believed that his only option was the restroom facility at the housing unit. Despite Rose having obtained permission from his supervisor, Stout filed an *Incident Report* against Rose alleging that he was away from the work area. Rose contends that the *Incident Report* was a retaliatory effort by Stout for Rose engaging in protected activity.

The validity of the rule Rose was charged with violating is not challenged here. Prisons are dangerous places, and require rigorous security measures to insure inmate and staff safety. Restricting inmate movement, and knowing where inmates are at any point in time, are integral components of providing for inmate and staff security. The defendants document the need for inmate movement limitations and inmate accountability. Stout states that the sole reason for his filing the December 21, 2005, disciplinary report was because Rose was not at his assigned work station when accountability was at issue. Rose does not dispute this fact. Lloyd investigated the discipline report and found it to have merit, and forwarded it on as provided by policy. In fact, Rose admitted that he was not where he was supposed to be when the disciplinary report was given to him. Thus, by Rose's own admission, there was a basis for the disciplinary action.

This court finds that Stout's reason for issuing the disciplinary report was not to retaliate against Rose for exercising his right to use the bathroom. Rather, the disciplinary report was issued for a legitimate penological reason in that Rose was not at his assigned place at his designated time. There is no admissible evidence suggesting otherwise. In addition, Rose ultimately was not disciplined for being absent. There can be no basis for a retaliation claim based upon the filing of a disciplinary report because the disciplinary report never resulted in a finding of guilty--it was expunged. Stout and Lloyd had a justifiable basis for going forward with the disciplinary report. That report, after further investigation and explanations, was never pursued against Rose and was expunged. There

7

is no dispute that Rose was not disciplined for leaving his work area on December 21, 2005. Because Rose was not disciplined for his December 21, 2005, absence from his work area, there is no basis for a claim that Rose suffered retaliation by being disciplined. Accordingly, the motion for summary judgment as to Rose's retaliation claim must be granted.

## Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted). It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley,* 482 U.S. 78, 84 (1987). However, Rose has not identified a genuine issue of material fact as to his claims in this case, and the defendants are entitled to judgment as a matter of law. The motion for summary judgment (dkt 72) is therefore **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/25/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana